***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Garner and the briefs and oral arguments on appeal. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission affirms and adopts the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The date of the injury that is the subject of this claim is September 10, 2001.
2. On such date, the parties hereto were subject to and bound by the provisions in the North Carolina Workers' Compensation Act.
3. On such date, an employer-employee relationship existed between Employee-Plaintiff and Employer-Defendant.
4. On such date, Employer-Defendant employed three (3) or more employees.
5. On such date, the carrier of workers' compensation insurance in North Carolina for the Employer-Defendant was American Interstate Insurance Company.
6. Employee-Plaintiff's average weekly wage was $705.56, yielding a compensation rate of $470.38 per week.
7. All parties are properly before the Industrial Commission, which has jurisdiction over the parties and the subject matter.
8. At the hearing, the parties submitted two letters dated September 27, 2001, and October 3, 2001, to American Interstate Insurance Company from Bruce Whitaker, which was admitted into the record, and marked as Stipulated Exhibit 2. Additionally, the Deputy Commissioner entered the following exhibits into evidence:
1. Plaintiff's Exhibit 1 — two photographs of the 1976 Woodchuck chipper machine, W/C-12.
2. Plaintiff's Exhibit 2 — two photographs of the 1976 Woodchuck chipper machine, W/C-12.
3. Plaintiff's Exhibit 3 — photograph of engine housing for the 1976 Woodchuck chipper machine, W/C-12.
4. Plaintiff's Exhibit 4 — photographs of broken Timco fan blade.
5. Plaintiff's Exhibit 5 — 1976 Woodchuck chipper machine, W/C-12 Operation, Maintenance and Parts Manual from Woodchuck Chipper Corporation, Shelby, North Carolina.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was 57 years of age, with his date of birth being December 29, 1945. At the time of his admittedly compensable injury by accident, plaintiff was employed as a foreman and had worked for the employer-defendant for approximately 15 years.
2. On September 10, 2001, the plaintiff was injured at work when he was cleaning debris away from the engine housing of a 1976 Woodchuck chipper machine, W/C-12. At that time, the chipper machine was not running correctly as the governor of the engine was surging up and down. Plaintiff was cleaning debris away from the engine housing and away from the machine, a fan blade from the power unit or engine sheared off and flew out of the engine housing, striking plaintiff on his right forearm causing a near amputation of his arm and hand.
3. The compensability of this injury has been accepted by the defendant through the filing of Industrial Commission Form 60. Pursuant to this Form 60, defendant has been making payments to plaintiff of total disability compensation at the rate of $470.38 per week.
4. As a result of his injury, plaintiff's surgeon, Dr. Alan Ward, has assigned a 95% permanent partial disability to plaintiff's right arm.
5. The fan blades used by the defendant in the Woodchuck chipper machine involved in this accident were made by a company called Timco, not Ford Motor Company. The engine of the Woodchuck chipper was a 172 Ford industrial sized engine that operated from between 3,000 and 3,500 rpms. The Timco fan blade used by defendant for the Woodchuck chipper was actually manufactured for an 8N tractor that operates between 2,000 and 2,500 rpms. The defendant had trouble with the Timco fan blades. The President of defendant testified that fan blades had broken before and landed in the radiator, shutting down the motor and when this happened the fan blade would tear up the chipper. The company had also experienced limb and tree debris damage to an engine of a chipper machine that did not have a cover. All these events occurred before plaintiff's injury.
6. The 1976 Woodchuck chipper machine, W/C-12 that plaintiff was working with on the date of the accident, did not have a protective guard or panel covering over the engine housing. Defendant had eight working full time chipper machines at the time of the accident. As of the date of plaintiff's injuries, only three or four of the chippers did not have guards or covers over the engine housing. The rest of the chippers had guards over the engine housing. At the time of the hearing, all chippers used by defendant except one had guards or covers over the engine housing. The President of defendant testified at the hearing it would have been possible to make a guard and install it on the Woodchuck chipper machine that injured plaintiff. The defendant's mechanic testified it would take approximately one hour to install a guard or cover over the engine housing of the machine that injured plaintiff.
7. The Operation, Maintenance and Parts Manual for the 1976 Woodchuck chipper machine, W/C-12 specifically states in Section 3.3, Page 3-3 "POWER UNIT: standard with complete enclosure including side panels." In addition, the manual provides in Section 5.2.1, Page 5-3 "SAFETY PRECAUTIONS: Observe the following safety precautions when operating the chipper.
*Insure that all covers and guards are in place and properly secured."
The word "CAUTION!" is prominently displayed on the left hand margin of the Safety Precautions.
8. Before plaintiff's injury, the company had experienced limb and tree debris damage to an engine of a chipper machine that did not have a cover or guard.
9. Prior to plaintiff's injury, the defendant was aware that chipper machines, including the Woodchuck chipper machine, were manufactured with a cover or guard over the engine housing.
10. The defendant's mechanic testified he thought some of the chippers had covers over the engine because of OSHA safety laws.
11. The President of employer-defendant testified that the Woodchuck chipper machine involved in plaintiff's accident should have had side panels or guards to enclose the housing of the engine. The defendant's contention was that it was not aware of any OSHA requirement for the guarding of engines of its chipper machines is not credible. The owner of Employer-defendant, Larry Langston had been involved in the tree service business for 27 years and worked with chipper machines during that time.
12. The applicable OSHA regulation provides that all machines are to be guarded as follows:
"(a) Machine Guarding —
 (1) Types of guarding. One or more methods of machine guarding shall be provided to protect the operator and other employees in the machine area from hazards such as those created by point of operation, ingoing nip points, rotating parts, flying chips and sparks. Examples of guarding methods are — barrier guards, two-hand tripping devices, electronic safety devices, etc.
 (2) General requirements for machine guards. Guards shall be affixed to the machine where possible and secured elsewhere if for any reason attachment to the machine is not possible. The guard shall be such that it does not offer an accident hazard in itself.
 (5) Exposure of blades. When the periphery of the blades of a fan is less than seven (7) feet above the floor or working level, the blades shall be guarded. The guard shall have openings no larger than one-half (1/2) inch."
(Emphasis added)
29 CFR § 1910.212(a)(1), (2), (5)
13. Based upon the totality of credible evidence of record, employer-defendant willfully failed to comply with 29 CFR§ 1910.212(a)(1), (2) and (5) which has been specifically adopted in North Carolina pursuant to N.C.G.S. § 95-131(a). Additionally, based upon the totality of credible evidence of record, this willful failure by Employer-Defendant to comply with § 1910.212(a)(1), (2) and (5), was a proximate cause of plaintiff's injury by accident of September 10, 2001.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On September 10, 2001, plaintiff sustained an injury by accident arising out of and in the course of his employment with employer-defendant. N.C. Gen. Stat.§ 97-2(6).
2. On September 10, 2001, plaintiff's average weekly wage was $705.56 that entitles him to the compensation rate of $470.38 per week. N.C. Gen. Stat.§ 97-2(5).
3. Employer-defendant's failure to install a guard or cover over the engine housing of the 1976 Woodchuck chipper machine, W/C-12 to cover the fan blades of the engine in this instance was a willful failure to comply with 29 CFR§ 1910.212(a)(1), (2) and (5) which has been adopted in North Carolina as an occupational safety and health standard, which all employers in North Carolina are required to follow, which was a proximate cause of his injury by accident.
4. Plaintiff is therefore entitled to a ten percent (10%) penalty on all past and future indemnity benefits. N.C. Gen. Stat.§ 97-12.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay the plaintiff a ten percent (10%) penalty on all past and future indemnity benefits. For the previously paid benefits, this penalty shall be paid to Employee-Plaintiff in a lump sum. This penalty is subject to the attorneys' fees approved herein.
2. A reasonable attorneys' fee of twenty-five percent (25%) of the ten percent (10%) penalty assessed on all past and future indemnity benefits is approved for counsel for Employee-Plaintiff, and shall be paid directly to plaintiff's counsel. For the previously paid benefits upon which the penalty is added, the attorneys' fees shall be deducted from the amount due plaintiff, and paid to counsel for plaintiff in a lump sum.
3. Defendants shall pay the costs of this appeal.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER